UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GREGORY A. ANKROM, | ) | Case No.  1:08CV1583 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE |
| | ) | GEORGE J. LIMBERT |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION AND ORDER** |
| COMMISSIONER OF | ) | |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Gregory A. Ankrom ("Plaintiff") seeks judicial review of the final decision of Michael J. Astrue, Commissioner of Social Security ("Defendant") which denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF Dkt. #1. Plaintiff asserts that the Administrative Law Judge ("ALJ") failed to fully and fairly develop the record, failed to make thorough findings as to whether Plaintiff's impairments met a listing under 20 C.F.R. Part 404, Subpart P, Appendix 1, failed to properly evaluate his credibility, and lacked substantial evidence for his residual functional capacity ("RFC") determination.  For the following reasons, this Court reverses and remands the case consistent with this Opinion.

**I.      PROCEDURAL HISTORY**

On April 14, 2005, Plaintiff filed applications for DIB and SSI alleging disability beginning

August 31, 2004 due to back, neck and hip pain. Tr. at 136-138. After the agency denied his applications initially and on reconsideration, Plaintiff requested a hearing before an ALJ. *Id.* at 19, 37-43, 48-106. A hearing before an ALJ was held on September 21, 2007, where Plaintiff waived his right to counsel and Plaintiff and a vocational expert ("VE") testified. *Id*. at 190.

On October 23, 2007, the ALJ found that Plaintiff was not disabled and therefore not entitled to DIB or SSI. Tr. at 33. Plaintiff filed a request for review of the ALJ's decision and the Appeals Council denied review. *Id.* at 4-7. The Appeals Council thereafter set aside its denial so that it could consider additional information, but denied Plaintiff's request on May 16, 2008, after reviewing the additional information and finding no reason to review the ALJ's decision. *Id*. at 6-10. The ALJ's decision therefore stands as the final decision.

**II**.     **RELEVANT TESTIMONY FROM THE HEARING BEFORE THE ALJ**

At the September 21, 2007 hearing before the ALJ, Plaintiff and the VE testified. Tr. at 190. The ALJ informed Plaintiff of his right to be represented by counsel or a non-attorney at the hearing and Plaintiff indicated that he was waiving that right. *Id.* at 192-193. Susan Herman, Plaintiff's sister, was also present at the hearing and the ALJ asked if she intended to be a witness at the hearing. *Id*. at 195. Ms. Herman responded that she did not intend to be a witness. *Id.*

Plaintiff explained that his biggest problems with working full-time were the pains that he experienced in his neck, shoulders, lower back, hip and knee. Tr. at 207-208. He testified that his worst pain came from his lower back which was exacerbated by bending over and not standing straight up before moving in another direction. *Id.* at 208. He indicated that he was taking Dilantin for seizures and had been on the medication since experiencing one seizure in 1994. *Id*. at 209. He further stated that he was currently treating with his family doctor, Dr. Weiss. *Id.* at 195.

Plaintiff testified that he lives alone in a small efficiency apartment and he cooks and cleans for himself. Tr. at 210. He has a high school education and a driver's license, but stated that his neighbor drives him to the laundromat and grocery store. *Id*. at 211. Plaintiff discussed his prior employment, including his jobs as a chucker and a janitor. *Id*. at 198-202.

The ALJ asked if there was any other information that Plaintiff wanted to share about his condition. Tr. at 211. Plaintiff replied that when he applied for a job or was hired and on the job, people thought that he was drunk because of the way that he talked. *Id.* at 211-212. He indicated that he was in a motor vehicle accident in 1978 and after he came out of a coma and had surgery due to a depressed skull fracture and other injuries, the sound and loudness of his voice had changed because the doctors also had to do a tracheotomy. *Id.* at 212-213.

### III.   STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to DIB and SSI. These steps are:

1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (§§20 C.F.R. 404.1520(b) and 416.920(b) (1992));

2. An individual who does not have a "severe impairment" will not be found to be "disabled" (§§20 C.F.R. 404.1520©) and 416.920(c)(1992));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see §§20 C.F.R. 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (§§20 C.F.R. 404.1520(d) and 416.920(d) (1992));

4. If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (§§20 C.F.R. 404.1520(e) and 416.920(e) (1992));

>	5.	If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (§§20 C.F.R. 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992). The Plaintiff has the burden of going forward with the evidence at the first four steps and the Commissioner has the burden at Step Five to show that alternate jobs in the economy are available to the claimant, considering his age, education, past work experience and residual functional capacity. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

## IV.	**RELEVANT PORTIONS OF THE ALJ'S DECISION**

In the ALJ's decision, he proceeded through the steps for the entitlement to social security benefits. He found that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. Tr. at 27. He also found that Plaintiff had the severe impairments of degenerative disc disease ("DDD") of the lumbar spine and DDD of the cervical spine, but neither of these impairments met or equaled a Listing. *Id*. at 28. He discounted Plaintiff's credibility relating to his complaints of pain and capabilities and assessed that Plaintiff had the RFC to perform light work which consisted of: frequently lifting, carrying, pushing and pulling up to ten pounds frequently and twenty pounds occasionally; standing or walking up to one hour at a time and then sitting down for two minutes before resuming standing or walking; sitting six hours of an eight-hour workday; occasionally climbing ramps or stairs, but not ladders, ropes or scaffolds; occasionally stooping and crouching; and the avoidance of hazardous machinery, unprotected heights or engaging in commercial driving. *Id*. Based upon this RFC, and the vocational expert's testimony, the ALJ found that Plaintiff was not disabled because a significant number of jobs existed in the economy that he could perform given the described RFC. *Id*. at 32.

## V. STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by § 205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Therefore, this Court is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990). The Court cannot reverse the decision of an ALJ, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla of evidence, but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is based upon the record taken as a whole. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365 (6th Cir. 1984). It is evidence that a reasonable mind would accept as adequate to support the challenged conclusion. *Id.*; *Walters,* 127 F.3d at 532.

This Court can remand a case to the Commissioner under sentence four of 42 U.S.C. § 405(g), sentence six of 42 U.S.C. § 405(g), or under both of these sections. Sentence four provides that a district court has the power "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). A sentence-four remand provides the required relief in cases where there is insufficient evidence on the record to support the Commissioner's conclusions and further factfinding is necessary. *Faucher v. Sec'y of Health & Human Servs*., 17 F.3d 171, 174 (6th Cir. 1994), citing *Sullivan v. Finkelstein*, 496 U.S. 617, 625-26 (1990). "It is well established that the party seeking remand bears the burden of showing that a remand is proper under Section 405." *Oliver*

*v. Sec'y of Health & Human Servs.*, 804 F.2d 964, 966 (6th Cir.1986), citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551 (6th Cir. 1984).

An ALJ's decision may be reversed and benefits immediately awarded only if the record adequately establishes a plaintiff's entitlement to benefits. *Newkirk v. Shalala*, 25 F.3d 316, 317 (6th Cir. 1994). The decision to deny benefits can be reversed and benefits immediately awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking. *Faucher*, 17 F.3rd 171, 176 (6th Cir. 1994). Where further factual issues remain, the case should be remanded for further factfinding. *Id.*

## VI.  ANALYSIS

### A.  DEVELOPMENT OF THE RECORD BY THE ALJ

Plaintiff first asserts that the ALJ failed to fully and fairly develop the record because he was unrepresented by counsel and the ALJ failed to recognize or investigate a traumatic brain injury ("TBI") that he suffered in 1978. ECF Dkt. #18 at 8-12. He contends that although he waived his right to legal representation, the ALJ nevertheless had a duty to scrupulously and conscientiously probe into the relevant facts surrounding the TBI, especially when he indicated in documents filed with the SSA that he could not think clearly, he gets drowsy and dizzy, and medical evidence submitted to the Appeals Council indicated medical history which included a compound, comminuted depressed skull fracture with cerebral laceration. *Id*.

An ALJ has a "special duty" to develop the record when a claimant is not represented in order to make sure that a full and fair record is developed. *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 856 (6th Cir. 1986) and *Lashley v. Sec'y of Health & Human Servs.,* 708 F.2d 1048, 1051-1052 (6th Cir. 1983). An ALJ has a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," when the claimant is unrepresented at the hearing.

6

*Lashley,* 708 F.2d at 1052-1053. The ALJ must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Id.* No bright line test exists for determining whether the ALJ has met his or her duty and therefore such a determination is made on a case-by-case basis. *Id.* at 1052.

In the instant case, the record shows that Plaintiff waived his right to representation after the ALJ informed him of the right to counsel or other representation at the hearing. Tr. at 192-193. However, the Court finds that the ALJ failed to fully and fairly develop the record relating to Plaintiff's 1978 brain injury and possible residual effects.

Although a brain injury was not listed as a basis of his claim for disability, the record shows that Plaintiff mentioned the brain injury in social security forms and at the ALJ hearing. In his request for hearing before the ALJ, Plaintiff indicated that he disagreed with the determination made on his claim because his ability to perform easy tasks was getting worse. Tr. at 43. He further indicated that he could not think clearly, and he suffers from dizziness and drowsiness. *Id.* In his initial disability report, Plaintiff also related that he gets dizzy easier, he sleeps a lot, he loses his train of thought easily, he lacks balance such that co-workers think he is drunk, he has trouble remembering things at least ten times per day, and he has to write everything down on paper. *Id.* at 86-87. He also indicated in his disability appeal form that he gets dizzy and drowsy often, he cannot think clearly, and he forgets things easily. *Id.*

During his hearing before the ALJ, Plaintiff also testified that he was reassigned to a job mopping floors because no one explained the job of running an automatic chucking machine to him, the job for which he was originally hired, and he indicated that he "really didn't catch on to that" even though he had prior employment as a chucker for four years with another employer. Tr. at 193, 202. Plaintiff further related that he was let go from employment as an assembler straightener because he

7

could not comprehend how to do the job. *Id*. at 205-206.

In addition, when the ALJ asked Plaintiff if he wished to add anything further to information regarding his medical conditions, Plaintiff related that whenever he interviewed for a job or was hired, his employers thought he was drunk because of the way that he talks. Tr. at 211-212. He indicated that when he came out of his coma in 1978 after the car accident, doctors did a tracheotomy and his voice deepened. *Id*. at 212. He further mentioned that his mother had wanted him to pursue Social Security benefits in 1978 since the car wreck. *Id*. at 207.

Further, Dr. Michael Harris, an agency examining physician, issued a report on May 24, 2005 indicating that Plaintiff stated that he felt disabled due to neck pain, back pain, hip pain, drowsiness and dizziness. Tr. at 112. Dr. Harris noted that Plaintiff was "in his usual state of health" until June 3, 1978 when he was involved in a severe car accident in which he suffered a skull fracture. *Id.* Dr. Harris noted that Plaintiff was a poor historian and presented with no medical records or no diagnostic imaging studies. *Id*. Dr. Harris further indicated that Plaintiff mentioned a worsening of his dizziness over the past year which he had begun feeling after the 1978 accident but had subsided until the past year. *Id*. at 113. Plaintiff also told Dr. Harris that his speech started becoming unclear over the last year. *Id.* Dr. Harris noted that significantly, Plaintiff had been on Dilantin for the past ten years after he suffered a seizure and had a seizure disorder. *Id*. Dr. Harris noted that Plaintiff's past medical history included the seizure disorder for which he took Dilantin five times per day. *Id*. Dr. Harris also note that Plaintiff was alert and oriented, he had good abstract reasoning, and he could recall six numbers forward and four numbers backward. *Id*. at 114. Plaintiff also performed serial 7's and his cranial nerves were intact. *Id*. Dr. Harris indicated that Plaintiff "should be able to" perform limited light work and he stated that Plaintiff could manage benefits if they were awarded. *Id*. at 116.

8

Despite Plaintiff's indications in his social security reports and before the ALJ, and despite the information provided by Dr. Harris in his report, the ALJ failed to follow up on Plaintiff's 1978 brain injury or any long-term consequences. Based upon these reports, sufficient evidence existed in the record to suggest that Plaintiff suffered from a potential cognitive impairment which warranted further probing by the ALJ as to such an issue and into whether Plaintiff's mental condition formed a basis of his disability claim. *See Mickevich v. Barnhart*, 453 F.Supp.2d 279 (D. Mass. 2006)(While prejudice was not established in order to warrant remand of case, ALJ should have delved deeper into claimant's mental condition even though claimant did not list the condition as basis of disability and denied history of depression as record contained sufficient evidence in the record).

As pointed out by Defendant, a remand is not appropriate for a failure to develop the record unless resulting prejudice is shown. ECF Dkt. #18 at 15-16, citing *e.g., Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th Cir. 1997); *see also Mickevich*, 453 F.Supp.2d at 288. The Court finds that Plaintiff in this case was prejudiced by the failure of the ALJ to probe further into Plaintiff's cognitive difficulties that could have resulted from his brain injury. Plaintiff mentioned the cognitive difficulties in his disability reports to the agency and mentioned them to Dr. Harris. Plaintiff also mentioned the motor vehicle accident at the hearing, and he indicated that he had lost unskilled jobs due to his inability to comprehend the task. Moreover, Dr. Harris noted some of Plaintiff's cognitive complaints in his 2005 report and the fact that Plaintiff suffered a skull fracture in the serious 1978 motor vehicle accident. These indicators should have put the ALJ on notice to inquire further into the motor vehicle accident that caused a brain injury to Plaintiff and to obtain medical records surrounding the brain injury any long-term effects from the injury.

For these reasons, the Court finds that the ALJ failed to fully and fairly develop the record relating to Plaintiff's cognitive conditions. The Court accordingly remands this case for further

factfinding by the ALJ, perhaps with the aid of a consultative physician and a request for additional medical records from Plaintiff's medical sources, if any exist.

### B. LISTING OF IMPAIRMENTS, CREDIBILITY AND RFC

Since a full and fair development of the record relating to Plaintiff's cognitive difficulties and 1978 brain injury may impact whether his conditions meet or equal the Listing of Impairments, and may also impact a redetermination of Plaintiff's credibility and RFC, the Court declines to address these additional assertions advanced by Plaintiff.

**IT IS SO ORDERED.**


Date: September 10, 2009 /s/George J. Limbert
GEORGE J. LIMBERT
U.S. MAGISTRATE JUDGE